**In the Matter of PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

**In re TAX COMPROMISE PROGRAM.**

No. 70–347.

United States District Court, E. D. Pennsylvania.

Sept. 15, 1977.

Maryland Atty. Gen. Office by Carl E. Eastwick, Asst. Atty. Gen., Baltimore, Md., for State of Md.

Carl Helmetag, Jr., John J. Ehlinger, Jr., Philadelphia, Pa., for the Penn Central Trustees.

Kelley, McCann & Livingstone by Walter C. Kelley, Jr., Margaret A. Foster, Cleveland, Ohio, for Cleveland Bd. of Ed.

William F. Hyland, Atty. Gen. of N. J., by Herbert K. Glickman, Barry D. Szafgrman, Deputy Attys. Gen., Trenton, N. J., for State of N. J.

Richard B. McQuade, Jr., Pros. Atty., Fulton County, Ohio, Wauseon, Ohio, for Ohio County Treasurer and other Ohio taxing authorities.

City of Pittsburgh Law Dept. by D. R. Pellegrini, Pittsburgh, Pa., for City of Pittsburgh.

William J. Scott, Ill. Atty. Gen., by Gerald L. Gold, Asst. Atty. Gen., for State of

Illinois and 43 Illinois Counties having claims herein.

Jersey City Law Dept. by Bruce C. Fishelman, Jersey City, N. J., for City of Jersey City.

Shearman & Sterling by Kenneth M. Kramer, New York City, for Citibank, N.A. as Agent for the Committee of Secured Bank Creditors.

Gratz, Tate, Spiegel, Erwin & Ruthrauff by Spencer Ervin, Jr., Philadelphia, Pa., Sullivan & Worcester by Joseph Auerbach, Boston, Mass., for New Haven Trustee.

## MEMORANDUM AND ORDER NO. 3147.

FULLAM, District Judge.

Orders Nos. 2922 and 2929 authorized the Trustees to extend offers to all taxing authorities to settle all outstanding tax claims by an immediate payment in cash of 50% of the principal amount of all post-bankruptcy taxes, or 44% of the aggregate of pre- and post-petition taxes, whichever is greater. The present deadline for acceptance of the compromise proposal is October 22, 1977.

A group of petitions now before the Court seek to have the deadline extended. Some of the petitioners also ask the Court to remedy what the petitioners assert are improper actions taken by the Trustees in furtherance of the tax compromise program.

The Cleveland Board of Education, and certain other taxing entities, assert that the Trustees have violated this Court's Orders, and have acted unfairly in their treatment of tax claimants generally, by taking actions designed to encourage taxing entities to accept the proffered compromise. I am persuaded, however, that this Court's Orders have not been violated, that the rights of the petitioners have not been infringed in any way, and that judicial intervention would be inappropriate at this time.

The compromise offer contemplates the payment in full of the principal amount of all claims not in excess of $10,000. Nearly 1600 of the approximately 2500 tax claims are in that category. The Trustees had assumed that virtually all of these small claimants would deem it advantageous to accept the settlement offer. With respect to the larger claims, the Trustees knew that some claimants were opposed to the compromise, and that others, for various reasons, had not yet reached a decision. But there were a large number of claimants in both categories who had not made any response to the settlement offer, and whose positions in the matter were unknown.

Accordingly, the Trustees embarked upon a program of mailing to each of these tax claimants a draft in the amount which would be due if the settlement offer were accepted. Before mailing out these drafts, the Trustees caused telephone calls to be placed to a responsible official of the taxing entity, explaining what was being done.

Each draft was accompanied by a covering letter which was neutral in tone, which contained no misrepresentations, and which adequately explained the purpose and effect of the drafts. Specifically, the letters and accompanying drafts explained that, by endorsing and presenting the drafts for payment, the taxing entity would be accepting the compromise settlement; and that, while the drafts would remain valid only for a period of three weeks, failure to endorse and present the drafts within that period would not affect the right of the recipient to accept the compromise proposal at any time thereafter, until the expiration of the offer on October 22.

The telephone callers were instructed to be entirely neutral, and not to attempt to "sell" the compromise program; and there is no evidence that these instructions were violated. If the official telephoned expressed any objection to the draft arrangement, no draft was sent to that taxing entity.

While the telephone calls, letters and drafts were themselves entirely neutral in tone, the entire program can be interpreted as a mild attempt to prod the taxing entities into accepting the compromise proposal. Not only is some degree of persuasion inherent in the very act of sending out drafts under these circumstances, but the mailings

included copies of newspaper clippings showing that the tax compromise proposal had been accepted by various state and local taxing entities, but did not inform the recipients of any instances of rejection of the tax compromise by other taxing entities, or of objections to the proposal filed by other taxing entities, or of the pendency of appeals from the enabling Orders of this Court.

■ But even if the Trustees had exhorted the taxing entities to accept the compromise offer, judicial intervention would be inappropriate. In their negotiations and dealings with individual creditors and groups of creditors in this context, the Trustees obviously have the right to take positions, and to urge others to share their views, just as do other parties in interest, including the petitioners. The various applications for sanctions will be denied.

The more difficult problems arise in connection with the petitions for an extension of the settlement offer deadline.

As discussed in this Court's Memorandum in Support of Order No. 2922, in choosing between acceptance of the compromise offer or pursuing their claims under the Reorganization Plan, each taxing entity is required to act on the basis of presently available knowledge. While knowing what treatment is proposed for tax claims under the Plan of Reorganization, a claimant cannot know whether the proposed Plan will be approved, confirmed, and consummated without substantial change in that regard, or just when the Plan proceedings may be brought to a conclusion. And, to the extent that the proposed Plan or whatever finally emerges provides for satisfaction of tax claims in whole or in part by the issuance of securities rather than cash, a further example of the necessity for reliance upon a business judgment, rather than objective fact, arises.

I adhere to the view previously expressed, that taxing entities which wish to do so should be afforded the opportunity to receive immediate payment under the settlement program. In short, the continued existence of uncertainties, or even the introduction of new uncertainties, such as new legislative proposals which are apparently being proposed to Congress, provide no persuasive reason for granting the blanket, open-ended, extensions sought by the petitioners.

It is quite probable, however, that intervening events may make some further extension desirable.

The Trustees propose to file a further report on the status of the tax compromise program, not later than October 7, 1977, together with their recommendations concerning possible extension of the settlement deadline. By that time, the Trustees, and other parties, will presumably have received the report of the Securities and Exchange Commission, due September 30, 1977. Both the Trustees' report and the SEC report will be available in advance of the present deadline under the settlement program.

■ If the settlement deadline is to be extended, all tax claimants, as well as the parties customarily notified in these proceedings, should have an opportunity to express their views, and should be made aware of the final outcome. Since a final decision with respect to the settlement deadline can best be reached after the filing of the Trustees' report and the SEC report, and after argument on the Plan of Reorganization, it seems pointless to anticipate these filings by making an interim decision at this time, and thus to necessitate an additional round of notices. It suffices, for present purposes, to assure the petitioners that no taxing entity will be deprived of a reasonable period of time in which to act after this Court's decision of the extension issue.

There are special problems involving taxing entities in Ohio, and perhaps other states, whose statutes precluding acceptance of compromise offers have been, or are being, revised so as to enable such claimants to accept the compromise proposal. The Trustees will be required to address these issues in their forthcoming report.

## ORDER NO. 3147

AND NOW, this 15th day of September, 1977, upon consideration of the Petition of the Board of Education, Cleveland School District (Doc. No. 14004), the Petition of the State of West Virginia (Doc. No. 14019), the Petition of the City of Pittsburgh (Doc. No. 14020), the application of certain Ohio county treasurers and other county-level taxing authorities (Doc. No. 14021), the Petition of the State of New Jersey (Doc. No. 14038), the Petition of the State of Illinois (Doc. No. 14068), the Petition of the State of Maryland (Doc. No. 14069), it is ORDERED:

1. To the extent that the said Petitions, and all other related applications presented at the hearing held September 9, 1977, seek an adjudication of contempt or the imposition of sanctions, they are DENIED.

2. To the extent that said Petitions and related applications seek an extension of the deadline for acceptance of the compromise offers extended pursuant to Orders Nos. 2922 and 2929 herein, they are DENIED WITHOUT PREJUDICE.

3. The Trustees shall, on or before October 7, 1977, file with this Court a report covering the status of the tax compromise program authorized by Orders Nos. 2922 and 2929. In such report, the Trustees shall include any recommendations they may have regarding the tax compromise program.

4. The Trustees shall serve copies of the report referred to in the preceding paragraph upon:

(a) all parties customarily notified in these proceedings;

(b) the Secretary of Transportation and the Attorney General of the United States;

(c) the Attorneys General of all states in which Penn Central Transportation Company conducted operations prior to April 1, 1976; and

(d) all tax claimants.

5. Following receipt of the aforesaid report, the Court will determine whether an opportunity should be afforded other parties to comment thereon, and whether or not a hearing should be held, and, in any event, will enter such further order or orders with respect to the tax compromise program as may be appropriate.